[No. 17685.  *En Banc.*  March 17, 1924.]

## S. INASHIMA, *Respondent*, v. NORMAN M. WARDALL, *as County Auditor for King County, et al., Appellants.*[1]

COUNTIES (35)—OFFICERS—LIABILITY FOR NEGLIGENCE—EVIDENCE—SUFFICIENCY. In an action by a chattel mortgagee against the county auditor and his official bondsmen, for negligence in failing to properly index the mortgage, by reason whereof he lost his security, the plaintiff's case covered every essential fact to be proved, where he offered the judgment roll in a former case in which foreclosure of his mortgage was enjoined on account of the auditor's error in indexing the same, and that his defense in that action was tendered to the auditor and his bondsmen, who failed to appear.

CORPORATIONS (263)—FOREIGN CORPORATIONS—ACTIONS—NOTICE TO DEFEND—PROCESS—SERVICE ON AGENT. Rem. Comp. Stat., § 7044, requiring a foreign insurance company to appoint an agent for the service of process and that service may be made on the state insurance commissioner, has no application to and does not require that notice to such a company, requiring it to appear and defend an action, shall be served as a summons, but the same may be given to any other person representing the company.

JUDGMENT (208, 209)—CONCLUSIVENESS—PARTIES PRIMARILY LIABLE—NOTICE TO DEFEND. A judgment enjoining the foreclosure of a chattel mortgage because of an error in indexing, which precluded the record from being notice to a bona fide purchaser, and the judgment roll in the action, the defense of which was tendered to the county auditor and his official bondsmen and by them declined, is not conclusive on them as to their liability to the mortgagee; since

[1]Reported in 224 Pac. 379.

it was not determined or material in that action as to whose fault it was which resulted in the error in the indexing; so that the auditor was not bound to assume the defense.

COUNTIES (35)—OFFICERS (61)—LIABILITY FOR NEGLIGENCE—DEFENSES—RECORDING CHATTEL MORTGAGE.  In an action by a chattel mortgagee against the county auditor and his bondsmen for erroneously indexing the mortgage through misspelling the name of the mortgagor, it is a complete defense that the mortgagor so illegibly wrote his name that it was necessary to resort to the body of the instrument where the name was misspelled through the mistake of the scrivener, resulting in the erroneous index through no fault of the auditor.

APPEAL (365) — REVIEW — QUESTIONS CONSIDERED — JURISDICTION. Where the trial court excluded an instrument, offered by plaintiff to disprove a defense that the signature was illegible, on the ground that the defense was immaterial, the supreme court will not, on defendant's appeal, examine the instrument to determine, as a matter of law, whether it would have supported the defense in any event, although it is in the record, as that would assume the function of a court of primary jurisdiction.

Appeal from a judgment of the superior court for King county, Tallman, J., entered July 27, 1922, upon the verdict of a jury rendered in favor of the plaintiff by direction of the court, in an action on an official bond.  Reversed.

*Winter S. Martin, George McKay,* and *C. B. White,* for appellants.

*George Olson* and *S. H. Steele,* for respondent.

FULLERTON, J.—On October 21, 1920, one George Koike, a Japanese, being then the owner of a certain automobile, mortgaged the automobile to one S. Inashima, also a Japanese, to secure the payment of a promissory note for $1,000, given to evidence a loan made on that day by Inashima to Koike.  In preparing the mortgage the scrivener used a printed form, writing with a typewriter the names of the parties to the instrument and the necessary descriptive matter in

the blank spaces left therein for such purposes.  The name of the mortgagor appears so typewritten twice in the body of the instrument, once in the acknowledgment, and once in the affidavit of good faith.  In each instance it is written George Kioke.  The mortgagor, in executing the mortgage, wrote his name in the ordinary English script.  After the execution of the mortgage, the mortgagee left it with the county auditor of King county for filing, who indexed it under the surname of Kioke.

Later on Koike, being in possession of the automobile, sold and delivered it to a Japanese by the name of Yamaguchi, who in turn sold and delivered it to another Japanese, one K. Imai.  On the maturity of the note which the mortgage was given to secure, the mortgagee began foreclosure thereof by notice and sale.  The officer having the notice for execution seized the property and proceeded to advertise it for sale, whereupon Imai began an action in the superior court to restrain him from so doing, on the ground that he was a purchaser of the automobile for value and without notice, actual or constructive, of the existence of the mortgage.  After the service of the complaint upon him, Inashima, the mortgagee, tendered the defense of the action to the county auditor, Norman M. Wardall, and to his official bondsman, the National Surety Company.  Neither of these parties, however, appeared, and the mortgagee defended in his own right.  He denied the traversable allegations of the complaint, and, by way of affirmative matter, set up his mortgage and asked its foreclosure by the superior court.  A trial was had on the merits of the action, at the conclusion of which the court, after certain preliminary findings, made the following findings of fact:

"That on the 15th day of December, 1920, one George Koike was the lawful owner and possessed of

the following described personal property, situated in the city of Seattle, King county, Washington, to wit:

"One seven passenger Winton touring car, 1918 model 21-A-, Engine No. 32400, together with all tools, accessories and equipment.

"That on said 15th day of December, 1920, the said George Koike, for a full and valuable consideration, sold and delivered said personal property to one K. Yamaguchi, of Seattle, Washington, representing the same to be free and clear of any and all liens or incumbrances, and the said K. Yamaguchi was a purchaser in good faith for value and had no knowledge, actual or constructive, of any lien or incumbrance thereon.

"That on the 24th day of May, 1921, the said K. Yamaguchi, for a full and valuable consideration, sold and delivered said personal property to the plaintiff, representing the same to be free and clear of any and all liens or incumbrances, and the plaintiff was a purchaser in good faith for value and had no knowledge, actual or constructive, of any lien or incumbrance thereon adverse to him, and immediately prior to said purchase the plaintiff caused the public records of the auditor of said King county, affecting the filing of chattel mortgages or other liens or incumbrances upon personal property and the indexes thereof to be searched, and said indexes failed to show the filing of any chattel mortgage or other lien made or executed by the said George Koike upon said personal property on or about October 21, 1920, or within ten days thereafter or at any time, but showed and indicated that said personal property was free and clear of any and all chattel mortgages, liens or incumbrances, and the plaintiff purchased said personal property as clear and unincumbered property in reliance upon said records and indexes and upon the said representations made concerning the same.

"That on or about the 21st day of October, 1920, the said George Koike made, executed and delivered to the defendant Inashima his one certain promissory note in the sum of $1,000, which note became due on January 21, 1921; that to secure the payment of said

note, said George Koike made, executed and delivered his certain chattel mortgage upon the above described personal property, dated October 21, 1920, in favor of the defendant Inashima; that thereafter on October 22, 1920, the said defendant delivered said chattel mortgage to the said auditor of King county, Washington, for filing, who thereupon affixed thereto instrument number 1461893, Vault No. 63275 of the records of his office, but he failed and neglected to enter said chattel mortgage in the Chattel Mortgage Index, kept by him for that purpose, under the name of George Koike, as mortgagor, and the name of Koike or George Koike does not appear at all in said index at or about said date as a chattel mortgagor of said personal property or at all, but upon other pages of said index the said auditor misspelled said name as 'Kioke' and entered the name 'George Kioke' on or about said date in said index, under the index classification 'Ki,' as a mortgagor of said personal property under said chattel mortgage; that a searcher of said records and indexes could not be reasonably or lawfully required to search for the name of 'Koike' under the index classification 'Ki'; that the name 'Koike' is a Japanese name having an intelligent meaning in the Japanese language and the word 'Kioke' has no intelligent meaning in said language; that said index gave to the plaintiff no notice, actual or constructive, of the existence of said chattel mortgage at the time of his said purchase or at all, and the same was not notice to him or to the world of the existence of said chattel mortgage, and the same is void and of no effect as to the title of the plaintiff in said personal property.

"That plaintiff was deprived of said automobile for 14 days, the use of which was reasonably worth $28 for said time; that plaintiff paid storage charges incurred by said sheriff of $5."

As matter of law, the court concluded that the mortgagee was not entitled to foreclose his mortgage, and that the contestant was entitled to a decree restraining the proceedings theretofore commenced, and to a decree quieting his title in and to the automobile as

against the mortgage or any one claiming thereunder. Subsequently, a decree was entered in accordance with the findings and conclusions.

After the entry of the foregoing decree, the mortgagee brought the present action against Wardall and the National Surety Company to recover as for a loss of his security, setting forth in his complaint the matters hereinabove related, and further alleging that the automobile was of greater value than the mortgage debt, that no part of the mortgage indebtedness had been paid, and that the mortgage debtor had absconded from the state and had left no property out of which the indebtedness could be paid. The surety company answered by a general denial. Wardall answered by denials and by an affirmative defense, the material part of the latter being as follows:

"That said mortgage contained the name of the mortgagor at the top of the first page in the body thereof in typewriting as 'George Kioke,' and also along in the middle of the first page in typewriting in the mortgage clause as said 'George Kioke' and again in the acknowledgment thereof on the back of said instrument as 'George Kioke.' That said affidavit of good faith, on the back of said instrument, contained the name, 'George Kioke' in typewriting and was signed in longhand 'Geo. Kioke' before the notary who administered the oath thereto. That the signature upon said mortgage was in longhand and was written and spelled 'Geo. Kioke' as nearly as the same could be deciphered, and said defendant and his deputies properly and carefully indexed the said instrument under the name 'Geo. Kioke.' And the defendant alleges that by reason thereof he was without negligence in the matter of filing and indexing said mortgage, and that the damage to the plaintiff, if any, was caused by accepting from the said mortgagor a mortgage so faultily and carelessly drawn and signed as to be read by the recording officer as Geo. Kioke, if in truth and fact said mortgagor's name was George

Koike, which this defendant denies, and he, the said plaintiff was negligent in offering the said mortgage for filing in the auditor's office a mortgage so drawn and executed, and said negligence was the proximate cause of plaintiff's damage and injury, if any in fact was by plaintiff sustained.''

On the trial of the cause, which was had before the court sitting with a jury, the mortgagee, to substantiate the controverted allegations of his complaint, introduced the judgment roll of the former case; that is, the pleadings, the findings and conclusions of the court and the decree entered therein; introduced evidence tending to show that notice of the pendency of that action had been given to the auditor and his bondsman immediately upon the institution thereof and that the defense thereto had been tendered them; that the mortgage debt had not been paid; that the mortgagor had absconded and was insolvent; that the mortgaged automobile was of a value in excess of the amount of the loan and in excess of the sum for which recovery was sought, and rested his case.

A motion for a nonsuit was interposed by the defendants and denied by the court, whereupon they tendered evidence in support of their affirmative defense. In substance, they offered evidence tending to show that the signature of the mortgagor to the mortgage was so illegibly written that it could not be determined whether the surname was Koike or Kioke from an inspection of the signature alone, and that it was necessary to resort to the body of the mortgage, the acknowledgment, and the affidavit of good faith attached thereto, wherein the name was typewritten, to ascertain its proper spelling; that, in many instances of instruments filed for record, the signatures thereto are so illegibly written, or written in such peculiar characters or in such peculiar style, that it cannot be

determined with certainty its proper reading or spelling, and that it is usual and customary for recorders of instruments generally to resort to the body of the instrument to ascertain the proper reading and spelling of the signature when the signature itself is illegible or for any reason obscure; further offering to show that the indexing of instruments in his office was under the charge of a deputy careful, skilful and experienced in such matters; that he was selected for the position because of these qualifications, and that he used the usual and ordinary diligence of recorders of instruments generally in indexing the particular mortgage. The court sustained objections to these offers of proof, basing its ruling on the ground that these were matters of defense in the former action, and that, since the auditor and his bondsman were tendered the defense of that action and declined to defend, they were conclusively bound by the judgment and decree therein. No other defense being offered, the court instructed the jury to return a verdict for the plaintiff against both defendants. This appeal is from the judgment entered on the verdict.

The appellants make two principal contentions; first, that the evidence on the part of the plaintiff was insufficient to sustain a judgment in his favor; and, second, that the court erred in sustaining objections to the proofs offered to substantiate the affirmative defense.

The first of these objections requires no extended discussion. The nature of the proofs submitted by the plaintiff, we have outlined in our statement of the nature of the action, and, in our opinion, they cover every essential fact necessary to be proven in order to warrant a recovery. On the general question of the sufficiency of the proofs, therefore, nothing more needs be said. A specific objection, however, was made to

the sufficiency of the notice to the surety company by which that company was sought to be vouched in to defend the action brought to set aside the mortgage. The company is a foreign corporation, and the notice was served on its general agent residing within this state. It is contended that a service of such a notice to constitute sufficient service must be made in the manner that a service of a summons is required to be made in a civil action, and it is argued that the service of a summons on the general agent of the company would not, under the statute, be service sufficient to give the court jurisdiction over the person of the company in such an action. But while it is true that the code provides (Rem. Comp. Stat., § 7044) [P. C. § 2920], that a foreign or alien insurance company, before it is authorized to transact business in this state, must appoint the state insurance commissioner its statutory agent for the service of process in all suits or actions brought against the company, and that service of process on the insurance commissioner shall be deemed service upon the company, we cannot think the statute relates to the service of notices generally, or, at least, to the extent that a notice may not be served on any other person representing the corporation.

The notice here in question is not a process within the meaning of the statute. It is not a means provided by statute by which a party is brought into court. The party served with it is under no duty to appear and no judgment can be taken against him if he does not appear. It is a notice merely to which the law attaches certain consequences, and the manner and form of its giving is immaterial so long as it imparts the necessary information. The agent in question here was testified to be the "general manager of the company for the state of Washington," and we think it plain that a

notice of this sort served upon him was service upon the company. Moreover, a letter containing the notice, registered and mailed to the insurance company at Seattle, Washington, was receipted for in the name of the company at the Seattle post office. This in itself would seem to be a sufficient service of the notice.

The second contention we think is better founded. The general rule is well settled that where one person is responsible over to another for an obligation to a third person, and the third person sues the second on the obligation, the person sued may make any judgment obtained against him conclusive against the person liable over as to all matters necessarily in issue therein by timely notifying him of the pendency of the action and giving him an opportunity to defend. When, therefore, the liability over is absolute, the judgment rendered of itself is conclusive of the judgment debtor's right to recover in an action between him and the person liable over. Illustrations are found in the instances where a third person sues the master for an injury caused him by the master's servant. In such cases the master may bind the servant to answer over for any judgment that may be rendered against him by timely notifying the servant to defend, and in a subsequent action by the master to recover against the servant, he may prove his right to recover by merely introducing the judgment roll; this for the obvious reason that the judgment roll on its face discloses the liability of the servant to answer. But it is at once apparent that there can be instances where the judgment roll does not on its face necessarily disclose a liability to answer over. It may be that the negligence or wrong giving rise to the primary liability was not necessarily the fault of the person sought to be charged secondarily therewith, and that the judgment roll does not determine the fact. In such an instance, the judg-

ment debtor in the cause must show by evidence extrinsic of the judgment roll that the liability giving rise to the judgment against him was, as between himself and the person he seeks to charge, the primary liability of such person. Illustrations are found in that class of cases where a municipality is held to answer for an injury caused by a defect in one of its streets, and seeks to recover over against a contractor, whom it charges with the cause of the defect and from whom it had taken an obligation to save it harmless from defects so caused. In such a case, it is never held that the judgment recovered against the city is conclusive of the contractor's liability, although the contractor may have been notified of the pendency of the action and has been tendered an opportunity to defend. This on the principle that the contractor's liability to answer over was not necessarily determined in the action in which the judgment against the city was recovered. The liability of the city being primary, it was enough for the plaintiff in the action to show the defect, not that it was caused by some particular person. *Seattle v. Saulez*, 47 Wash. 365, 92 Pac. 140; *Seattle v. Regan & Co.*, 52 Wash. 262, 100 Pac. 731, 132 Am. St. 963.

Applying these principles to the case before us, it seems clear that the question the defendants sought to litigate was not necessarily determined in the suit brought by the purchaser of the automobile against the mortgagee thereof. It was enough in that suit for the purchaser to show that, at the time of his purchase, he had no actual notice of the existence of the mortgage and that the records did not afford constructive notice to him. Whose fault it was that the records were thus defective in no way concerned him. He could recover whether the fault lay with the mortgagee or with the auditor, and any dispute between these persons had no place in the suit he was litigating. The question, there-

fore, whether the fact of improper record was the fault of the person presenting the mortgage for record is open to the auditor in any action brought by the mortgagee against him to recover as for a neglect to properly file and index the instrument. What would have been the rule had the auditor appeared, framed an issue against the mortgagee and tried out the issue, we need not here determine. It is enough to say that he did not do so, and that he was under no legal obligation to do so merely because he was given notice of the suit and an opportunity to defend.

It is further said that the matters pleaded and sought to be shown do not constitute a defense on the part of the auditor, but we think otherwise. Where an instrument is presented for record on which the name of the party bound is so illegibly written as not to be decipherable, and there is nothing else on the instrument to indicate what the true name is, unquestionably it would be within the right of the auditor to refuse to accept it until some person having authority to speak for the parties interested vouched for the name, and that he would not be liable for such refusal even though some right of a person affected by the instrument was thereby lost. But where in the body of the instrument the name plainly appears, although the actual signature be illegible, it is at least doubtful whether he would have such right. Clearly, it would be too much to say that, if he did accept such an instrument and indexed and recorded it in the name as it appeared in the body of the instrument, he is to be held liable as for a mistake, should it subsequently prove that the name so written was not the true name.

On the trial of the cause the appellants, as part of their proofs, tendered a photographic copy of the chattel mortgage. This offer of proof, as we have heretofore stated, the court rejected. The instrument,

however, was marked as a rejected exhibit and was brought to this court along with the record pertinent to the appeal. The respondents call attention to this instrument and insist that the name of the mortgagor thereon is so plainly written "Koike" that the auditor cannot, as matter of law, be heard to say that he was misled by the illegible nature of the signature. In other words, the contention is that this instrument of itself conclusively shows that the auditor was guilty of negligence and has no defense to the action, even though it be conceded that the judgment in the prior action was not conclusive against him. But this is a question we are not privileged to consider. It is without doubt the province of the trial judge, even when he is not himself the trier of the fact, to determine, as matter of law, whether the evidence proffered to prove a fact is admissible for that purpose and to determine, when the evidence is admitted, whether it is sufficient to warrant a favorable finding upon the issue involved, and it is within the province of this court to review his ruling on appeal. But neither of these is the question here involved. The trial judge did not exclude the proffered evidence because it did not tend to prove the defense interposed, but rejected it because, as he concluded, the defendants were estopped by judgment from making the defense which the evidence was offered to prove. The question whether the name is so illegibly written as to mislead is a question to be determined in the first instance by the court of primary jurisdiction, and as yet that court has not determined it. For this court, therefore, to examine the rejected evidence and then say that, as matter of law, it would have necessitated a judgment against the defendants would be to assume the functions of a court of primary jurisdiction; it would be to determine as a court of first instance questions of both law and fact. It is

perhaps needless to add that, in causes of the nature of the one now before us, the jurisdiction of this court is wholly appellate, and that for it to assume the functions of a court of primary jurisdiction would be to violate those provisions of the constitution which created it and defined its jurisdiction.

The judgment appealed from is reversed, and the cause remanded for a new trial.

MAIN, C. J., HOLCOMB, TOLMAN, PARKER, BRIDGES, MACKINTOSH, and MITCHELL, JJ., concur.

PEMBERTON, J., concurs in the result.